Attenuation Environmental Company, NRC. Good morning, Your Honor. May it please the Court, I'm Justin Propper, attorney for Appellant Attenuation Environmental Company. It seems to me there's a threshold issue that I would submit is dispositive of the case, and that is, is there any obligation on the part of the government with respect to exercising options? If it's an unfettered right, we lose. If there is any discretion or review that's required to go into whether or not an option is to be exercised, I would submit we win, and I'll get into the reasons. Didn't the contract board conclude that there were certain standards that had to be abided by and that the government met those standards? I'm sorry? Didn't the contract board hear? Yes. And I was going to get into the standard first, but I'll address your question, Your Honor. Where the board went awry is when it found that there were actual reasons to justify why the option wasn't exercised. The reasons that the judge cited to were all after-the-fact rationales created by someone who wasn't involved in the decision-making process at a time when counsel for the NRC was involved. The evidence is undisputed, and I think indisputable, that there was one and only one person who was responsible for reviewing the contract. That was Kelly Jamerson. Can we go back to your initial thought, which was that if the government has discretion under this options clause, then you lose. That's what I heard you say. If the government has no discretion, meaning they have the unfettered unilateral right to do whatever they want, which is the argument that the government is making. I'm going to call that discretion. What about it says the government may extend the term of this contract, but they have to give 15 days' notice. Then it's very clear. It says the preliminary notice does not commit the government. Then later in Part B, it says if the government exercises this option. Why don't the words like may and if and preliminary notice does not commit, why don't those give the government the option? This is the whole question, right? Right. The cases cited by the government in the one federal circuit cases, government systems advisors, has different language than what we're dealing with here. In that case, it says at the option of the government, which this court held was a unilateral right that cannot be breached no matter what the reasons or lack of reasons are for not exercising an option. What is your view about what standard we ought to apply and how? What are the criteria we would use? The answer to that question, Your Honor, would be in the Digital Techs, Inc. v. United States case, which was the United States Court of Federal Claims decision dealing with options. In that case, there was a one-year base contract and four one-year options. In that case, the contract was terminated for convenience, but the government in that case took the position that there was no way they could be liable because with respect to options, the defendants argued that the government was not obligated to exercise any of the options in DTI's contract and it was an IDIQ contract. In a court of claims and denying a motion to dismiss held that although still at the allegation stage, the matter is pled in the case currently before the court and the reasoning of the ASBCA and CCI, although not binding race-sufficient issues needing resolution to warrant denying the government's motion to dismiss. And the cases that were relied upon were board decisions which held damages may be awarded for unexercised option years of a contract if a contract approves that the decision not to exercise an option was a product of bad faith or so arbitrary and capricious as to be an abuse of discretion. So the digital tech case... So the answer to my question is that you would say the standard is that you would have to show that the decision not to grant the extension, the option, was bad faith. No. Bad faith or an abuse of discretion and or arbitrary... Or arbitrary and capricious. Correct. Which leads to an abuse of discretion. Correct. We are not advocating or suggesting that there was bad faith associated with the denial. So you're saying it's arbitrary. It was arbitrary. Correct. And there can be nothing more arbitrary, Your Honor, than doing nothing. And in this case, it goes a step further because Kelly... I understand doing nothing is not exercising the option. How is that arbitrary? It's not doing... You exercise the option or you don't exercise the option. They chose not to exercise the option. Right. So how is that arbitrary? Because in order to have an abuse of discretion standard, and in all the cases we cite in our brief, Your Honor, address this point, there has to be reasons for why the option wasn't exercised. Why? Because otherwise you abuse your discretion. It goes to the threshold issue when you're dealing with any discretionary right. In the cases from... I tell my kids, you can eat green beans or lima beans. I don't give a rat's patootie which one they choose, but they've got to choose one. I give them the option. They choose one. What says... Name one case that tells me that when the government refuses to exercise an option, it is required to put on record the reasons for doing so. There's neither a case that goes one way or the other specifically dealing with options. But terminations for convenience, Your Honor, which also... It's different. You're terminating a contract. This is not terminating a contract. It's refusing not to enter into a new one. Then the case, Your Honor, that I would say that is digital text of the United States. Dealing with options, Your Honor... I think your argument is frivolous. Frivolous. I think the nature of options gives the person discretion to choose one way or the other, and I don't think that they have any reason to put their bases on. Now, there's a different scenario if they do put a bases on, and that bases is clearly bad faith or abusive. That's different. That creates a scenario, and that's why those cases exist. Like what if the government says, you know, I don't like the way you look. I'm going to give this contract only to people that look different. You know, those sorts of things are like, wait, time out. Government's got to exercise fair dealing. That's totally out of bounds. But an option like this, whether they want to extend it or not, I don't see how they don't have unfettered discretion to decide what to do it so long as they don't do something illegal in the process, something completely bad faith, something that would be a complete abuse of discretion, but simply not telling you why they choose to exercise an option, I don't see how that could ever be an abuse of discretion. This is a little different, Your Honor, because the woman who was responsible for making the recommendation, whose recommendation would have been accepted by the contracting officer, Claudia Melgar, that is undisputed, testified she would have exercised the option had she known it was her job to do so. How can it not be an abuse of discretion in an arbitrary decision if it's me? I raise my hand. It's my job. I'm supposed to review it. Even the other contracting officer who wasn't involved, Ms. Malone, testified it was this woman's job, and she should have done a review as part of her job, but she didn't know it was her job. She didn't know. It was her job on the first option, which she recommended that the option be exercised and it was done, but she didn't know it was her job this time. So as the judge kept saying during the hearing, someone was asleep in the White House. Yeah, no one knew it was her job. I asked Ms. Jamerson if you had done your job. If you had done your job. We're not asking for the government to do some crazy, unbelievable jumping over hurdles. We're just asking for the person whose responsible for doing the review to actually do the review. No, what you've asked for in your briefs is a really broad standard that would apply to lots of cases outside the context of your very narrow factual situation. You had to ask for that broad standard because it's the only way to shoehorn your facts in. That's the problem. The broad standard you've asked for would extend to lots and lots of cases. I don't see a way to have a standard that is as narrow as to only apply to your cases and not sweep in all these others. Your Honor, in procurement decisions, in bid protests, in termination for convenience, it's in every single case where there's any type of discretionary decision. This is a discretionary decision. Are you abusing your discretion? Every single one of those examples, Your Honor. You're yelling at me right now. You're yelling at this court. You're angry and you're emotional. I'd ask you to tone it down. I apologize, Your Honor. I have a loud voice and I do get emotional. Your voice got louder when I told you I thought your case was frivolous. Maybe you want to back it down a little. I apologize, Your Honor. I didn't mean to offend you. With respect to an abuse in each of those instances, Your Honor, whether it's termination convenience, procurement issues, bid protests, they're all abuse of discretion standard. All I'm asking this court to apply is that when there's a discretionary determination, there actually has to be some reason to justify the decision. And in this case, there was no reason because the evidence is undisputed that if Ms. Jamerson had done her job, she would have recommended that the option be exercised and we wouldn't be here. Is it your view that the government has to articulate its reasons? No, it doesn't. It just has to have a reason. It can be any reason that's reasonable. How do we review reasons if the government doesn't articulate reasons? They don't have to articulate in the sense they don't have to tell the contractor. But there actually has to be some reason, Your Honor, why you decided in the way that you did when there's a discretionary obligation on the part of the government. It doesn't create an obligation. It creates an opportunity. That's the difference. There's not an obligation. An obligation was the wrong choice of words. You're correct. When you're making a discretionary determination, discretion, in order to not abuse that discretion, all you need is to sit down, discuss it, and have a reason why you did what you did. If you don't communicate it to the contractor, that's fine. But when the contractor sues you, you have to be able to articulate to the court, this is why we did it. And then judges ultimately will decide was that reasonable. And it's not a high standard, particularly when there's wide discretion. I'm having a hard time seeing how the argument you're making today is where this court looked at similar language in an options clause and said the government had discretion, end of story. Right. In that case, Your Honor, the language was different. It was at the option of the government, not that the government may exercise. To me, that was the language that this court was relying upon to say that there was no obligation at all. So you have a different interpretation of the contract, and you think that it obligates the government to do something. Obligates the government to just do a review. And if they did a review and said at the time, you know what, attenuation, you didn't do X, Y, or Z correctly, or we want to go in a different direction, or anything, anything, that's reasonable. I assume that the contract would articulate what the standards are, if that's what the parties had agreed to. And in the absence of standards, this judge still started the argument when she pointed out that the contract says the only obligation on the government is you have to give preliminary written notice and then give written notice of exercising the option. So you've got a contract, and it specifies what you have to do in order to satisfy this. Why aren't you reading standards into a contract that you've never agreed to? And it goes, I guess the answer is there's an applied duty of good faith and fair dealing in every contract. So when you have a discretionary clause like this, it's discretionary. The government can do it or not do it, but the courts have held that when you have a discretionary clause, whether it's bid, protest, procurement, termination, convenience, or indigenous tax, an option, that you have to act basically in good faith, that you have to not have abused your discretion when you make a determination. I'm not sure you have to act in good faith so much as you just can't act in bad faith. That's what the standard you read before said, right? There's a difference, right? There's a difference between acting affirmatively in good faith and not acting in bad. There is. And the good faith, Your Honor, goes to the abuse of discretion. So bad faith is one thing, right? But in order to act in good faith from an abuse of discretion standpoint, you have to, to me, right, and this is the argument from the cases that we cited and how I read them, and I think, and I guess I was, I took offense, and that may be the wrong word, to making a frivolous argument because I don't think in my career I've done that, and I think in this case, the standard, if applied, and there's an abuse of discretion standard, when the evidence is undisputed that the option would have been exercised had the government not made a mistake, that that's an arbitrary decision. Because it was only due to a mistake that my client didn't have the benefit of work during that final option period, which would have been substantial. Okay. You're well into your rebuttal, so I reserve two minutes for reply. Thank you, Your Honor. I appreciate that. May it please the court? Attenuation has no contractual right to the exercise of an option. Well, there are no standards whatsoever? Bad faith? Not written into the contract, Your Honor. No, but in contract law. I mean, not written into the contract, but are you saying that if the government acted in bad faith and said, I don't like white people, so I'm not renewing your contract, I'm not going to exercise this option, that they couldn't bring a cause of action under those circumstances? I don't know what the cause of action could be in that circumstance, Your Honor. In the conceded absence. Do you think that the law lays out at least a bad faith exception to unfettered discretion? Not that I'm aware of. Well, that would be unlawful if you were acting in a discriminatory fashion. Is there no way to rectify that other than filing a discrimination complaint with the EEOC? I don't know if there would be a cause of action for that or not, Your Honor. Of course, there is no bad faith in this case, so I don't think the court needs to address what would, if we're talking about bad faith meaning animus, essentially, I don't think the court needs to address if you have a government agent deciding not to exercise an option out of animus, whether that would be legal or not or whether that would be actionable. The implied duty of good faith, that relates to existing contractual rights, that under the implied duty of good faith and fair dealing, the government cannot interfere with the party's performance of the contract or its existing contractual rights, but they have no contractual right to have an option be exercised. Attenuation is no more, under the language of this contract, theoretically, a contract could be made that puts some sort of standards that the government has to follow or obligates the government to exercise an option in certain circumstances, but this contract doesn't do that. Under the language of this contract, attenuation has no more right to receive an option than a person on the street has a right to receive a government contract. There's no statutory right to have an option exercised. The regulations governing exercise of an option, those only relate to the affirmative exercise and are not for the benefit of the contractor in any event. So there is no right for them to sue for the non-exercise of an option. Did the contract board, the civilian board, agree with you? Did they not apply some standard of use of discretion, arbitrary and complete? That's the standard that the board applied, Your Honor. So you're disagreeing with the board? Yes, Your Honor. The board reached the right result, but we think the standard applied by the board is incorrect. Do you think we should be following the government system advisor's case where that's the kind of analysis that should be done, where you look at the, you interpret the contract language and see whether the government had discretion? Yes, Your Honor. What standard would apply? If the standard would have to be whatever the contract says. If the contract does not set forward any standards for the government to not exercise an option, then that should be the end of the story if the government does not exercise the option. This contract does have standards governing the affirmative exercise that the government has to give a notice prior to exercising it. Now, your friend cited a court of claims case, right, and they at least denied the government their motion to dismiss. So it seems like at least that court of claims judge may have disagreed with your fraud on the theory of the authority of the government. Are you familiar with the case? The digital text case? Right. And that decision was relying on the precedent of the board, which the board has been applying for decades. I thought it was a court of claims, no? Digital text? Maybe I'm wrong. Digital text. It's a federal claim, court of federal claims, Your Honor. Okay. So it's not binding. No, but so do they use the same standard that the Civilian Board of Contract Appeals used here, which is that there's not complete, absolute, unfettered discretion or whatever, that there's some standards that are applied. So does the court of claims generally disagree with the government's view as well? Yes, Your Honor. Typically, the court of federal claims will use, in some cases, they'll use a standard of bad faith. They'll say, in the absence of bad faith, the government has discretion, complete discretion to not exercise an option. And the one case we'll leave it behind on is the one that Judge Stowe? Government systems advisors, Your Honor, yes. The court cited that in high sheer, but there was not any really extensive analysis of it. I think government systems advisors is the controlling precedent here. As to just some of the factual issues, attenuation has argued that Ms. Jamerson, who is the contracting officer's representative for the base contract, wanted to exercise the option. Her testimony... Well, is she the woman that your friend said didn't know that she had the authority to do it, or is that a different individual? Well, the person with authority was the contracting officer, who is Claudia Melger. Wasn't there testimony that she would have done whatever Ms. Jamerson wanted? Well, her testimony on that is at page 1,028 and 1,031 of the record. So first she was asked, is it still true from what you testified to at your deposition that you had no substantive role in making a recommendation or decision on whether to exercise a second option? Yes or no, is that still true? And Ms. Melger answered, so I had a role. However, yes, that was a mistake. And then later on, the board judge said, so long as they put together the package properly and whatever, they review the package. But I mean, if the technical people are recommending that they exercise the option, then as a contract specialist, she will go along with that. And she answered absolutely correct. So she's testified essentially that if the contracting officer's representative asks her to exercise the option and has put together the package, which is their internal process for making sure that the requirements under the federal acquisition regulations for the affirmative exercise have been met, then she would review that package. And assuming that those requirements are met, then she would go along with that recommendation. But it doesn't mean she automatically will exercise the option without the contracting officer's representative requesting it, demonstrating that it's appropriate to do so under the regulations. So if the regulations were not satisfied and Ms. Jamerson, the contracting officer's representative was begging to exercise the option, I don't think the contracting officer could or would go along with that. So I think the idea that Ms. Jamerson controls this, even though she does not have the authority, I think is not supported by the evidence. But your bottom line view is that none of that matters, even if it were the case. Yes, Your Honor. And Ms. Jamerson herself testified, she testified at page 975 of the record, I didn't have a preference. And then she was asked, would you have recommended continuing to work with attenuation, given the fact that attenuation was the existing contractor for which you had no issues? And she answered, I would have recommended it, but I wasn't asked for a recommendation. So I think what she means there is she didn't personally have a preference, but if somebody had gone to her and said, we want to exercise the option, but we need your recommendation, that she would have been willing to go along with that, because she didn't herself have a preference one way or the other. But she was not advocating for affirmative exercise. And she was one of several people who were discussing whether it made sense, and considering the issues at the time. Page 475 of the record, there's an email that she wrote, Ms. Jamerson wrote on September 16, that was 13 days before the option expired. She wrote in part, I guess I, we need to discuss internally with Lydia whether it would be beneficial to exercise the option, given all of the issues we've had with Task Order 1, and the uncertainty of timing of work. I guess that's a good way to put it. And then there's a smiley face, for Task Orders 2 and 3. So that's just one example of several different government officials discussing internally whether it made sense to exercise this. So the notion that this is entirely after the fact, and the rationale for not exercising it, I think is not supported. Clearly they were discussing it at the time, before it expired. Some of those other, just to go over very briefly, some of those reasons, Ms. Jamerson was referring to all of the issues we've had with Task Order 1. Some of those issues related to attenuation's performance. There's a... There's no fact findings on any of this stuff in this record, so I don't know why you feel like you need to spin your wheels going over what reasons she might have come up with if she affirmatively decided not to exercise the option. There's no fact findings. I disagree with that, Your Honor. I think the Board considered all of this evidence and concluded that there was a contract-related basis under the rubric that the Board was applying for the... The way the Board put it was lack of motivation. You're talking about this specific woman and what may or may not have been in her head. That's what you keep reading to us. You obviously think that this is a significant point and you should spend a lot of time on it. All I'm saying is I don't know that that's really a relevant consideration to the resolution of the case, nor do I think it's what the lower court decided, what was in her head, what she would have necessarily done one way or the other, and I don't even know where you're going because it seems to me like you want us to make some sort of fact findings in the first instance, which is really weird considering the Chief Judge has tried to guide you at several times. Well, that's not really even relevant to your real argument, is it? But you're sort of missing those carefully crafted hints. If you want to keep going, keep going. It's your 1 minute and 22 seconds. I'm just not sure what relevance this has to what's in front of us. It shouldn't be relevant other than these are the facts that the Board relied on under the standard that the Board applied. We think that standard was incorrect. We think the contract does not give attenuation any rights to have its option exercised. That should be the end of the analysis right there. Thank you. Thank you. I just want to bring to the Court's attention a few additional decisions I think support the proper standard, and one of which was cited by the government TMI. This was cited on page 5 of the government's brief, or actually it was page 5 of our reply brief is where we address it, but it's the TMI Management System, 78 Federal Claims 445. The actual holding in that case was that the renewal of this contract is within the broad but not unlimited discretion of the government. That dealt with options, and in that case the Court of Claims, obviously not finding, but presumably aware of this Court's precedent, held that the government's renewal of the contract was proper because it was within the broad but not unlimited discretion of the government. That's the same standard we're asking this Court to apply here, that the government's broad but it's not unlimited. Another case, which is another Court of Federal Claims decision, E&E Enterprise Global v. United States, and that's 120 Federal Claims 165. That dealt with 14 different task orders. That was the government's only obligation was to provide the minimum task orders, which were 14. The contractor alleged that it was entitled to remedies because the government terminated that contract and the government argued we have no obligations beyond these 14. The Court held that the implied duty of good faith and fair dealing covered that situation. The Court held that simply because an IDIQ contract permits the agency to issue some task orders and to not issue others does not mean that the government's conduct in administering the IDIQ contract is beyond judicial review. The Court cannot, therefore, agree with the defendant. In this case, as a matter of law, the implied duty of good faith and fair dealing in the contract was not breached. Just as a last point, Your Honor, and I appreciate your courtesy, if the standard applies, and it's the standard that the lower court, or that the Board applied, that there's a four-part test whenever you have a discretionary determination which comes from decisions time and again from this Court, that if that applies, that the government abused that discretion because the evidence, notwithstanding what counsel argued, Ms. Jamerson said, I would have exercised, recommended that the option be exercised if I had known it was my job. And Malone and Malgar, the two contracting officers, both said they would have done whatever Jamerson said. So it's not a case where there was a reason why the contract option wasn't exercised. It's a case where the only reason the option wasn't exercised is because of neglect on the government's part. That's what makes the decision arbitrary. Thank you, Your Honor. Thank you. We thank both sides. The case is commuted. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 a.m.